IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**PEGGY WOOLLEY**                                                                                     **PLAINTIFF**

**v.**                                                 **CIVIL ACTION NO.:** 1:25cv144 TBM-BWR

**BILOXI PUBLIC SCHOOL DISTRICT**                                    **DEFENDANT**

**COMPLAINT**
**JURY TRIAL DEMANDED**

**COMES NOW** the Plaintiff, Peggy Woolley, by and through counsel, Watson & Norris, PLLC, brings this action to recover damages of violations of her rights pursuant to the Age Discrimination in Employment Act (ADEA) for age discrimination against the Defendant, Biloxi Public School District. In support of this cause, the Plaintiff would show unto the Court the following facts to-wit:

**THE PARTIES**

1. Plaintiff, Peggy Woolley, is a female resident of Harrison County, Mississippi.

2. Defendant, Biloxi Public School District, may be served by serving the Superintendent, Marcus Boudreaux, 160 St. Peter Avenue, Biloxi, Mississippi 39530.

**JURISDICTION AND VENUE**

3. This Court has federal question jurisdiction pursuant to the Age Discrimination in Employment Act (ADEA).

4. Plaintiff timely filed his Charge of Discrimination with the EEOC on September 5, 2024, a true and correct copy of which is attached as Exhibit "A." The EEOC issued a Notice of Right to Sue on March 7, 2025, a true and correct copy of which is attached as Exhibit "B." Plaintiff timely files this action within ninety (90) days of receipt

of her Notice of Right to Sue.

## STATEMENT OF FACTS

5.   Plaintiff is a 67-year-old female resident of Harrison County, Mississippi.

6.   Plaintiff was hired on August 23, 1995, as Teacher Assistant at the Biloxi Public School District (BPSD).

7.   On or around August 12, 2015, Plaintiff was promoted to the position of Records Clerk.

8.   Plaintiff worked in this position under Principal Dr. Todd Boucher until the fall of 2020.

9.   Throughout the entirety of her work under Dr. Boucher, Plaintiff received the highest marks possible on her annual job performance evaluations.

10.   In the fall of 2020, Dr. Vivian Malone was named the new Principal at Plaintiff's school.

11.   Under Dr. Malone's direction, Plaintiff continued to receive the highest marks possible on her annual job performance evaluations.

12.   In August 2023, BPSD hired a new Principal, Katie Bertucci (late 30s/early 40s female) at the school where Ms. Wooley worked.

13.   On her annual job performance evaluation for 2023-24 for her work as a Records Clerk, Plaintiff received a Superior rating.

14.   On or around January 2, 2024, Ms. Bertucci informed Plaintiff that beginning in the spring of 2024, she (Plaintiff) would be returning to her previous role as a teacher's assistant.

15.   Plaintiff asked if this change was only for one semester and Ms. Bertucci

said no.

16.    Plaintiff stated that the two different positions had different pay grades and different work schedules.

17.    Ms. Bertucci stated that Plaintiff's pay would not change for the remainder of the school year. After that, however, Ms. Bertucci claimed she did not know what would happen.

18.    Notably, of all the changes that Ms. Bertucci made at that time, Plaintiff's was the only one that was a demotion in job title; all the other changes Ms. Bertucci made were lateral moves.

19.    The very next day after Ms. Bertucci met with Plaintiff, Ms. Bertucci hired Mackinizie Sonnier, a 23-year-old female with no experience, as the new Records Clerk.

20.    Later, Plaintiff learned from a co-worker that during December 2023, Ms. Sonnier had applied for the position of Teacher Assistant but was told that the Records Clerk position had recently come open, and so she was hired for that position.

21.    On or around July 31, 2024, Plaintiff received her contract renewal for the 2024-25 school year.

22.    On this document, Plaintiff was listed as a Teacher Assistant and her pay was listed as $9628.48 less than what she was offered for the previous year.

23.    On September 5, 2024, Plaintiff filed an EEOC Charge of age discrimination against BPSD.

24.    On October 1, 2024, in response to Plaintiff's Charge, BPSD submitted a Position Statement to the EEOC.

25.    BPSD's Position Statement alleges that, "After her initial hire, Woolley was

transferred to the position of Records Clerk for Popp's Ferry Elementary School located in the District on August 17, 2015. Her salary scale changed with the transfer in position. On January 3, 2017, Woolley was transferred from the Records Clerk position to Office/Clerical, still with the same elementary school, and was on the same salary scale as when she was serving in the Records Clerk role."

26. Plaintiff has no specific recollection of her job title being changed from Records Clerk to Office/Clerical (or Secretarial/Clerical, as it says on the 2023/2024 job assignment form).

27. When Ms. Warner was hired, she replaced another employee who transferred out of Popp's Ferry Elementary and went to work at the high school.

28. Ms. Warner did not replace Plaintiff.

29. Ms. Warner managed students' records and Plaintiff managed teachers' records.

30. Whether the job title changed or not, it made no significant change in Plaintiff's job duties or her pay.

31. The time clock (i.e., Time Trust) continued to list Plaintiff as the "Records Clerk" and as late as the 2022/2023 school year, Plaintiff's ID badge listed her as the "Records Clerk".

32. BPSD's Position Statement alleges that, "Between July 2020 and July 2023, the elementary school had personnel changes, specifically the Principal of Popp's Ferry Elementary. On July 1, 2023, Ms. Katie Bertucci was hired as the principal for the 2023-2024 calendar school year. According to the Assistant Principal, Ms. Emma Wylie, issues began to arise with Woolley's employment, specifically her performance in the office

staff/clerical position she was serving in since 2017. Notably, it appears that there were personality conflicts between Wooley and Principal Bertucci, as well as others within the administration at the school. As noted by Principal Bertucci, Woolley's job performance issues never improved and confidential information was shared outside the administrative offices by Woolley."

33. Plaintiff contends this allegation is replete with false and misleading information.

34. Plaintiff adamantly denies that there were ever any issues with her performance in her role as the office staff/clerical position.

35. Plaintiff contends that while Ms. Bertucci frequently interacted in an aloof and condescending manner, Plaintiff endeavored to respond respectfully.

36. Moreover, this in no way hindered Plaintiff from maintaining a consistently strong job performance.

37. In July 2023, Ms. Bertucci held a meeting conducted with all three members of the office staff: Ms. Warner, Administrative Assistant Abigail Cowan, and Plaintiff.

38. During that meeting, Ms. Bertucci spoke generally about her administrative plans and her expectations for the office personnel.

39. In October 2023, Ms. Bertucci held another meeting with the office personnel.

40. At that time, she indicated there were changes she planned to make.

41. At no time during either of these meetings did Ms. Bertucci (or anyone else) express that they were unhappy with Plaintiff's job performance or that Plaintiff was exhibiting a bad attitude.

42. No mention was ever made that Plaintiff needed to improve in any area of her work.

43. Plaintiff has never been written up or even verbally counseled/warned about anything.

44. As noted above, Plaintiff has consistently received superior job performance ratings.

45. BPSD's Position Statement alleges that, "The office staff/clerical employees are effectively the "face of school." These employees, including Woolley, are expected to have effective message communication; maintain office cleanliness; promptly manage teacher requests; adhere to lunch breaks; ensure that office doors are closed as required; uphold professional conduct, trustworthiness, and confidentiality; and properly accrue comp time or compensatory time off. Despite these job requirements, and staff meetings focused on these requirements and expectations, Woolley failed to fulfill her job duties. In fact, her action or inaction led to what Ms. Wylie and Principal Bertucci described as a toxic environment where Woolley was attempting to undermine the school's administration, including, importantly, the principal.
Notably, two meetings were held in July 2023 and October 2023 to address the expectations of Woolley and other office staff and the concerns with Woolley's performance. The Mississippi Code of Ethics applicable to employees, including Woolley, was discussed with a special focus on Professional Conduct (Standard 1); Trustworthiness (Standard 2); and Confidentiality (Standard 3). Despite these meetings and coaching, Woolley continued her pattern of undermining the school's administration and directly affected the image of the school to parents, other staff members, and

students. Based on her failure to fulfill her role as an office staff member, she was transferred back to the role of teacher assistant in a first-grade classroom at Popp's Ferry Elementary School effective January 2, 2024. After the transfer, Woolley's performance issues were mostly remediated and she performed well in the teacher assistant role."

46. Plaintiff contends these allegations are false and disingenuous.

47. Plaintiff flat denies that she "failed to fulfill her job duties" or that she contributed in any way to a "toxic environment" or attempted to undermine the school administration or the principal.

48. These allegations are false and were never addressed in either of the meetings, i.e., July 2023 and October 2023.

49. Moreover, during the meeting in October 2023, Ms. Bertucci spoke about making some changes, but she made no connection between her proposed changes and any allegations related to Plaintiff's job performance.

50. Furthermore, it was not until around January 2, 2024, that Ms. Bertucci informed Plaintiff that beginning in the spring of 2024, she (Plaintiff) would be returning to her previous role as a teacher's assistant.

51. At that time, Plaintiff asked if this change was only for one semester and Ms. Bertucci said no.

52. Plaintiff stated that the two different positions had different pay grades and different work schedules.

53. Ms. Bertucci stated that Plaintiff's pay would not change for the remainder of the school year.

54. After that, however, Ms. Bertucci claimed she did not know what would

happen.

55. Again, at no point during any of this time were allegations of poor job performance made against Plaintiff by Ms. Bertucci or anyone else.

56. BPSD's Position Statement alleges that, "Woolley alleges in her Charge that she was in the role of records clerk when she was transferred back to teacher assistant. However, this is not true. She was in the role of office staff/clerical in the front office of Popp's Ferry Elementary School. Regardless, her rate of pay for the 2023-2024 school year was $22.96 per hour for 200 workdays. See Non-Exempt At-Will Statement of Assignment, Exhibit "B." When the decision was made to move her back to teacher assistant in January 2024 based on her performance issues, her contract pay was continued through the completion of the Agreement (May 28, 2024). See *id.*
As noted above, Woolley signed the new At-Will Agreement for the 2024-2025 school year to serve as a teacher assistant. Her rate of pay under this agreement is $18.12 per hour for 187 workdays. See Exhibit "A." The difference in pay is due to the different pay scales applicable to the positions of teacher assistant versus secretarial/clerical. After she was transferred back to teacher assistant in January 2024, the District hired Mackinizie Sonnier as the secretarial/clerical staff member, not records clerk. Ms. Sonnier was paid based on the applicable pay scale."

57. Plaintiff contends these allegations mischaracterize the events that occurred.

58. As already stated, in January 2024, Ms. Bertucci made no allegations that Plaintiff's job performance was a problem in any way.

59. As described above, around January 2, 2024, when Ms. Bertucci informed

8

Plaintiff that she would be transferred back to the position of Teacher Assistant, Ms. Woolly noted that the position had a different pay grade.

60. Ms. Bertucci responded that Plaintiff's pay would not change for the remainder of the 2023-2024 schoolyear, but she (Ms. Bertucci) claimed not to know what would happen with Plaintiff's pay after that.

61. It is also notable that the very next day, i.e., around January 3, 2024, BPSD hired 23-year-old Ms. Sonnier and placed her in the position previously held by Plaintiff.

62. Prior to that, Ms. Sonnier had no experience working in a school district and she was substantially less experienced than Plaintiff.

63. The forced transfer from the Secretarial/Clerical pay grade to the Teacher Assistant pay grade represented a substantial demotion and cut in pay for Plaintiff, i.e., from the 2023-24 year to the 2024-25 year, she suffered a pay cut of $9628.48.

64. BPSD's Position Statement alleges that, "As noted in the above chart, Ms. Sonnier, who was initially hired to fill the secretarial/clerical role, was paid the base salary with an increase based on her education. Also, as noted above, Ms. Sonnier did not stay in the position for long and was replaced by Ms. Kelly Williams, who was paid based on her experience with an increase based on her education. Woolley's salary difference is based on the position that she is working for the 2024-2025 school year. That is, she is paid on a different scale as a teacher assistant. Furthermore, a teacher assistant works less hours in a calendar school year than a secretarial/clerical position in the office (187 days versus 200 days)."

65. Plaintiff contends that she (Plaintiff) was replaced by the substantially younger and less experienced Ms. Sonnier.

9

66.   Plaintiff is fully aware that the Teacher Assistant position paid a different scale.

67.   Plaintiff had worked as a Records Clerk (or in the Secretarial/Clerical role – it was the same job) since August 2015.

68.   The reality is that this transfer represented a significant demotion and pay cut for Plaintiff, as stated above.

69.   Moreover, the allegation that this demotion and pay cut was due to job performance problems of any kind is patently false, unsupported by any documentation, and a pretext for age discrimination.

70.   BPSD's Position Statement alleges that, "The Biloxi Public School District did not transfer Woolley back to teacher assistant because of her age. Importantly, Woolley was not terminated. She was transferred back to teacher assistant based on her failure to fulfill the job duties associated with the secretarial/clerical position. Woolley was transferred to this position for nondiscriminatory reasons to include that she was creating a bad working environment and failed to uphold the standards of conduct required of the secretarial/clerical or front office position. She has not alleged, much less proven, any ADEA violation. For those reasons, the Biloxi Public School District respectfully requests that the EEOC issue a "no cause" determination and dismiss Woolley's Charge."

71.   As stated repeatedly above, these allegations are false and completely unsupported.

72.   Plaintiff displayed no "failure to fulfill the job duties" associated with her position and she never "failed to uphold the standards of conduct required".

73.   Notably, despite this current refrain in BPSD's Position Statement, no

specific examples of how Plaintiff allegedly failed have been cited and there is no documentation (i.e., no write-ups, reprimands, verbal reprimands, etc.) to support these allegations.

74. In short, all these vague allegations made by BPSD regarding Plaintiff's job performance are wholly false and a pretext for age discrimination.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF THE ADEA – AGE DISCRIMINATION

75. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 74 above as if fully incorporated herein.

76. Defendant has discriminated against Plaintiff because of her age based on the facts identified above which constitute a violation of the ADEA.

77. Plaintiff has suffered lost wages and benefits as a result of Defendant's discriminatory acts.

78. The unlawful actions of Defendant complained of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE PREMISES CONSIDERED,** Plaintiff respectfully prays that upon hearing of this matter by a jury, the Plaintiff be granted the following relief in an amount to be determined by the jury:

1. Back wages;
2. Reinstatement or future wages in lieu of reinstatement;
3. Liquidated damages;
4. Attorney's fees;
5. Lost benefits;
6. Pre-judgment and post-judgment interest;
7. Costs and expenses; and
8. Such further relief as is deemed just and proper.

THIS the 20th day of May 2025.

          Respectfully submitted,

          Peggy Woolley, Plaintiff

        By: /s/Louis H. Watson, Jr.
          Louis H. Watson, Jr. (MB# 9053)
          Nick Norris (MB# 101574)
          Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
4209 Lakeland Drive #365
Flowood, MS 39232
Telephone: (601) 968-0000
Facsimile: (601) 968-0010
Email: louis@watsonnorris.com
    nick@watsonnorris.com